UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NO.:

| | |
|---|---|
| Diane Ruzin,<br><br>      Plaintiff,<br><br>vs.<br><br>Kent Anderson,<br>Federal Deposit Insurance Corporation<br><br>      Defendants. | **COMPLAINT**<br><br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

## I. PRELIMINARY STATEMENT

1. Plaintiff brings this action for declaratory judgment to determine the current legal status of title to the Torrens property Lot 22. Block 2, "Crystal Lake Heights" Addition in the County of Hennepin, State of Minnesota, PID # 07-029-24-11-0045, also identified as 3526 Halifax Avenue North, Robbinsdale, Minnesota 55422, which Plaintiff has owned and resided in for approximately the past 36 years.

## II. JURISDICTION

2. Jurisdiction for this Court arises under 28 U.S.C. §§ 1332(a)(1) and (c)(1)

3. Plaintiff is a citizen of the State of Minnesota.

4. Defendant Federal Deposit Insurance Corporation ("FDIC") is a corporation organized and existing under the laws of the United States with its principal place of business located in Washington, D.C.

1

5. The amount in controversy requirement of 28 U.S.C. § 1332(a) is satisfied as Plaintiff seeks declaratory relief reinstating her interest in the property, which she lost due to fraud in a foreclosure reconveyance, which she subsequently rescinded.

6. The value of the property (the amount in controversy) exceeds $75,000.

### III. PARTIES

7. Plaintiff Diane Ruzin is a natural person residing at 3526 Halifax Avenue North, Robbinsdale, Minnesota, ("Halifax property") and is a "consumer" as that term is defined by 15 U.S.C § 1602(h) and is an "owner" as that term is defined by Minn. Stat. § 325N.01(g).

8. Kent Anderson is a natural person, believed to reside in the state of Minnesota.

9. Defendant FDIC. is claiming an interest in the property, which it obtained from Jeffery Anderson, as a result of his fraudulent and unlawful conduct against Plaintiff.

### IV. FACTUAL ALLEGATIONS

1. In or about 2004, Plaintiff was facing foreclosure on the Halifax Property, her home and residence for the past 30 years.

2. At the time her home went into foreclosure, Plaintiffs was 3 months behind in her monthly principal and interest payments of $940.47 per month. Plaintiff's full monthly payment, including taxes and insurance was approximately $980 per month.

3. At the time her home went into foreclosure, Plaintiff owed the holder of her mortgage note in excess of $1,930.94 for missed monthly installments and late fees for an accelerated balance of $149,182.82.

4. At the Plaintiff transferred title to her house to Defendant Anderson for $205,000, the mortgage pay off was $156,372, therefore Plaintiff had approximately $48,628 in equity in the property at the time of the sale to Defendants.

5. After Plaintiff received notice of pending foreclosure she began receiving solicitations by US Mail offering to help her save her home.

6. Among the solicitations received was one from Blake Anderson, who upon information and belief is Kent Anderson's brother.

7. Desperate to come up with a way to save her home from foreclosure, Plaintiff contacted Blake Anderson.

8. In or about September 2004, Plaintiff met with Blake Anderson in her home. Blake Anderson offered various "refinancing" alternatives that could be arranged to "save" Plaintiff's home and pay off other outstanding debt.

9. At the meeting with Blake Anderson, Plaintiff asked directly, on at least two occasions, for assurances that she would be able to retain her home and the equity she had built up over years of mortgage payments.

10. Blake Anderson repeatedly assured Plaintiff that she would retain her home and not lose her equity.

11. Blake Anderson represented to Plaintiff that the intention was to help Plaintiff avoid foreclosure and keep her home and to pay off other outstanding debt.

3

12. Based on Blake Anderson's repeated representations that he could help Plaintiff stay in her home, and in light of his knowledge of Plaintiff's situation, Plaintiff reposed trust and confidence in Blake Anderson and eventually agreed to allow Defendant's to structure a real estate transaction.

13. Blake Anderson explained that he would assist in structuring a transaction that would save Plaintiff's home from foreclosure and allow her to stay in her home by selling the property back on a contract for deed after she got back on her feet, at which time she could buy back the home.

14. Blake Anderson told Plaintiff that in order to keep her home, she should have to transfer title to her home to Defendant Kent Anderson or she would lose the home to foreclosure.

15. Blake Anderson and the other Defendant Kent Anderson made these statements to Plaintiff with the intent to deceive.

16. Defendant Kent Anderson knew that Plaintiff found herself facing foreclosure because she was unable to make monthly payments of $980, yet contrived to get Plaintiff into a contract for deed which required Plaintiff to pay in excess of $1300 per month.

17. After convincing Plaintiff that he would assist her in saving her home, Blake Anderson arranged for Defendant Kent Anderson to purchase the Plaintiff's home.

18. On or about November 12, 2004, after discussing several options the initial terms of agreement were set as follows:

- Kent Anderson would "purchase" the home for $205,000,

- Pay off the current mortgage at $155,987.

- Plaintiff would pay $3,000 in closing costs.

- Defendant Kent Anderson would receive $15,000 fee

- The remaining amounts from closing would be credited as a down payment on the Contract for Deed.

19. On or about November 16, 2004, a contract for deed was prepared and signed by Plaintiff and Defendants Kent Anderson.

20. A contract for deed is a foreclosure reconveyance as that term is defined by Minn. Stat. § 325N.10 Subd. 3.

21. The terms of the Contract for Deed were as follows:

- Plaintiff would execute a warranty deed

- The home would be purchased for $205,000.

- Plaintiff would make a down payment of $31,013

- Plaintiff would make monthly payments of $1,300 against a balance of $173,987.

- The entire balance would be paid in full on or before November 16, 2006

22. As a foreclosure purchaser, Anderson was required to enter into a written contract pursuant to Minn. Stat. § 325N.11, outlining the entire agreement with Ms. Stella.

23. Anderson failed to provide Ms. Ruzin with the required written contract and failed to provide her with a notice of cancellation, nor any statement informing Ms. Ruzin that she had five (5) days to cancel the contract in violation of Minn. Stat. § 325N.13-14.

24. Pursuant to Minn. Stat. § 325N.13(a), Plaintiff had the right "to cancel any contract with a foreclosure purchaser until midnight of the fifth business day

5

following the day on which the foreclosed homeowner signs a contract that complies with sections 325N.10 to 325N.15...."

25. Because Ms. Ruzin never signed a contract that complied with Minn. Stat. §§ 325N.10 to 325N.15, her right to cancel the contract with Anderson continued, until she exercised her right to cancel the contract on October 30, 2007.

26. Upon information and belief, prior to entering into the foreclosure reconveyance, Defendants Kent Anderson failed to verify that Plaintiff had a reasonable ability to pay for the subsequent reconveyance as required by Minn. Stat. § 325N.17(a)(1).

27. On or about November 22, 2004, at the time of closing, the HUD-1 indicates:
   - The contract sales price was $205,000.
   - The mortgage payoff was $156,372.64
   - Plaintiff paid $4,290.20 in closing costs
   - Plaintiff paid $2,805.52 settlement charges.

28. According to the HUD-1, Plaintiff received $41,210.79 at closing.

29. At the time of this "sale," Plaintiff never intended to transfer her right of possession to the property.

30. At the time of this transfer Defendants Kent Anderson never intended to take physical possession of the home.

31. At the time of the transfer Plaintiff agreed to Defendants Anderson purported sale based on the promise to reconvey the property to Plaintiff under a contract for deed because she was lead to believe by Defendants that it was the only way she could avoid losing both title and possession to her house.

6

32. The transfer of the deed was intended solely as a means of security.

33. Because Defendant Anderson had not provided Plaintiff with a contract as required the execution and transfer of the deed was prohibited by Minn. Stat. § 325N.11.

34. Plaintiff resided in the house both prior to and after the purported sale.

35. Plaintiff paid all property taxes and insurance on the home.

36. Because the parties did not intend the transfer actual possession of the property, but rather were only using the transfer of the deed to secure the repayment of money, the sale created an equitable mortgage.

37. Because the transaction created an equitable mortgage, Defendant Anderson was required to comply with the disclosure requirements of TILA, 15 U.S.C. §§ 1602(u), 1638 and HOEPA, 15 U.S.C. §§ 1639.

38. Defendant Anderson failed to provide any of the disclosures required by the Truth in Lending Act, 15 U.S.C. § 1601 et seq. and 12 C.F.R. § 226 et seq., including notices of the right to rescind.

39. Defendant Anderson imposed an interest rate of approximately 14.5%, in excess of 10% above the 2 year treasury security yield on October 2004, which was 2.55%, thereby requiring the Defendant to comply with the additional requirements of HOEPA, 15 U.S.C. § 1639.

40. Defendant's "fees" constitute unconscionable finance charges, in excess of 8% of the loan amount thereby requiring the Defendants to comply with the additional requirements of HOEPA, 15 U.S.C § 1639.

41. Loans, required to comply with the terms of 15. U.S.C. § 1639, in addition to providing the disclosures required under the Truth In Lending Act, must provide several additional disclosures and all the required disclosures must be made no less that 3 business days prior to the consummation of the transaction.

42. Upon information and belief Defendants failed to make any of the disclosures required pursuant to the Truth In Lending Act or HOEPA.

43. Because of Defendants failure to make the disclosures required by TILA and HOEPA, Plaintiff retained the right of rescission.

44. Plaintiff excercised this right of rescission on October 30, 2007.

45. On or about September 2, 2005, Blake Anderson emailed Plaintiff regarding the monthly payments and refinancing, wherein Defendant Anderson repeatedly referred to the house as " your home."

46. In addition to this email Blake Anderson on behalf of Defendant Kent Anderson repeatedly and continuously referred to the house as Plaintiff's home in numerous telephone calls and conversations.

47. Defendant Anderson's charging Plaintiff for the taxes and insurance on the house as well as making regular reference to the house as Plaintiff's home demonstrate that the intention of the parties was to transfer title to the property only as security for the loan while Plaintiff still retained an ownership interest and possession.

48. Upon information and belief, Defendant Anderson granted an interest in his interest to Plaintiff's house to third party without first obtaining Plaintiff's written consent as required Minn. Stat. § 325N.17(a)(3).

49. Upon information and belief, Defendant Anderson kept Plaintiff's monthly payments, and defaulted on loans he took out against his interest in the Property. Defendant Anderson's mortgagees have begun foreclosure proceedings against Defendant Anderson, seeking to foreclose on Defendant Anderson's ill-gotten interest in the Property, further threatening Plaintiff's ability to remain in her home.

50. Pursuant to Minn. Stat. 325N.17(f) a foreclosure purchaser shall not:

    …do any of the following until the time during which the foreclosed homeowner may cancel the transaction has fully elapsed:
    (1) accept from any foreclosed homeowner an execution of, or induce any foreclosed homeowner to execute, any instrument of conveyance of any interest in the residence in foreclosure;
    (2) record with the county recorder or file with the registrar of titles any document, including but not limited to, any instrument of conveyance, signed by the foreclosed homeowner;
    (3) transfer or encumber or purport to transfer or encumber any interest in the residence in foreclosure to any third party…

51. On or before November 22, 2004, affiliates of Defendant Anderson drafted a warranty deed, which purported to convey title from Ms. Ruzin to Anderson.

52. On or about November 22, 2004, before the time which she could cancel any contract with Anderson had fully lapsed, in violation of Minn. Stat. § 325N.17(f)(1), Ms. Ruzin was induced to sign a warranty deed purporting to convey her interest in her home to Anderson.

53. On or about November 22, 2004, before the time in which Ms. Ruzin could cancel any contract with Anderson had fully lapsed, Anderson accepted from Ms. Ruzin warranty deed purporting to convey an interest in Ms. Ruzin's home in violation of Minn. Stat. § 325N.17(f)(1).

54. Upon information and belief, before Ms. Ruzin's right to cancel any contract with Anderson had fully lapsed, this warranty deed purporting to convey an interest in Ms. Ruzin's home to Anderson was recorded with the county recorder or registrar of titles for Hennepin County in violation of Minn. Stat. § 325N.17(f)(2).

55. On or about November 22, 2004, before the time which Ms. Stella could cancel any contract with Anderson had fully lapsed, Anderson transferred or encumbered an interest in Ms. Ruzin's home in violation of Minn. Stat. § 325N.17(f)(3), by granting a security interest to the FDIC's predecessor in interest.

56. At the time Anderson allegedly granted the security interest in Ms. Ruzin's property, he did not have lawful possession of any interest in the property, could not lawfully induce or accept a transfer of interest from Ms. Ruzin, could not lawfully record a transfer of interest from Ms. Ruzin, or lawfully transfer or encumber any interest in Ms. Ruzin's property.

57. On or before November 22, 2004, FDIC's predecessor failed to inquiry of Ms. Ruzin, who was and remains in possession of the property, what interest she had in the property.

58. Ms. Ruzin's possession and occupation of the property served as notice of her interest in the property.

59. At the time of the transaction with Anderson, Ms. Ruzin never intended to transfer her right of possession to the property, rather Ms. Ruzin agreed to the transaction because she was lead to believe by Anderson that it was the only way she could avoid losing both title and possession to her house.

60. Anderson did not obtain Stella's written consent to transfer interest in her home to any third party.

61. On or about November 22, 2004, before the time in which Ms. Ruzin could cancel any contract had expired and before even the minimum five-day period under Minn. Stat. § 325N.13 had expired FDIC's predecessor in interest accepted a security interest from Jeffery Anderson in Ms. Ruzin's property.

62. Anderson could not grant any interest greater than he legally possessed.

63. The security interest Anderson granted in Ms. Ruzin's property exceed any interest he had in the property.

64. Any interest Anderson granted, was subject to Ms. Ruzin's right of rescission.

65. Anderson did not commence a foreclosure of the equitable mortgage.

66. Ms. Ruzin was not in default of her obligations under the equitable mortgage.

67. Upon information and belief, Anderson kept Ms. Ruzin's monthly payments and defaulted on loans he had unlawfully used the Halifax Property to secure.

68. Upon information and belief any deed issued by the Registrar naming Kent Anderson as owner of the Halifax property was based on the deed fraudulently obtained from Ms. Ruzin in violation of Minn. Stat. § 325N.17(f)

69. Upon information and belief, the mortgage registered against the property on or after November 22, 2004, was fraudulently granted by Anderson, in violation of Minn. Stat. § 325N.17(f).

70. On or about October 24, 2007, Ruzin began an action in US District Court of Minnesota against Defendant Anderson and others alleging that the transaction between Ruzin and Anderson was an equitable mortgage and in violation of the

Truth In Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*; the Home Ownership and Equity Protection Act (HOEPA), 15 U.S.C. § 1639 and the Minnesota Mortgage Foreclosure statute, Minn. Stat. § 325N.01 *et seq.* (See *Ruzin v. Anderso7 et al.*, D. Minn. Court File No.: 06-CV-04360.)

71. After Kent Anderson sought and was granted relief through bankruptcy, Plaintiff voluntarily dismissed the action without prejudice.

72. Plaintiff now brings this action for declaratory relief to determine the status of her home.

## V.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests a declaratory judgment:

A. Declaring that the security interest between Kent Anderson and FDIC's predecessor in interest is void as a result of Ruzin's rescission of the security interest she had granted Anderson;

B. Declaring that the security interest on the property granted by Kent Anderson is void, as Anderson obtained the deed to the property and granted the security interest in direct violation of Minnesota's anti-equity stripping law Minn. Stat. § 325N.17(f);

C. Declaring that enforcing any such lien offends public policy;

D. Declaring that recording of the deed transferring title to the property from Ms. Ruzin to Anderson is void having been recorded in violation of Minn. Stat. § 325N.17(f);

E.  Directing that title to the property be restored to Ms. Ruzin, free and clear of any interests granted to or by Kent Anderson; and

F.  For further relief as the court may find proper in addition to the costs and disbursements of this action.

Dated: 8/23/11

**Barry, Slade & Wheaton, LLC.**


  s/Nicholas P. Slade
Nicholas P. Slade
Atty. # 270787
2701 University Ave. SE. Ste. 209
Minneapolis, MN 55414
T: 612 379-8800
nslade@lawpoint.com